E. B. Fogg, Special J.,
delivered the opinion of the Court.
This is a bill filed to obtain a construction of the will of Mary Randolph, under which all the parties claim title to the negro slaves in controversy. The first clause of the will is as follows:
“I give and bequeath unto my two grandchildren, Peter Randolph and Sarah Randolph, heirs of my son Peyton Randolph, deceased, one negro woman named Ailsey, and her child Fanny, and all their future increase, to them and their heirs for ever. Ailsey and her child are not to be sold for the payment of any of my debts; but if my grandson Peter Randolph should die without issue, I will his proportion of the above property to my granddaughter Sarah Randolph; and if my granddaughter Sarah Randolph should die without an heir, I give her proportion of the above property to my grandson Peter Randolph. It is further my will and desire that if my two grandchildren Peter Randolph and Sarah Randolph should die without an heir of their body, I give Ailsey and her child Fanny, and all their future increase, to the heirs of my son Beverly Randolph, to them and their heirs for ever.”
The will is dated the 17th March, 1827, and the testatrix died in the spring or summer of that year. Sarah Randolph the legatee died in the year 1851, un *667 married and without issue. Peter Randolph survived his sister, and took possession of the negro slaves and their increase, sold two of them, and died in 1856, having first made his last will; and bequeathed these slaves and their increase to his widow, the defendant Sarah Randolph, and appointed the defendant D. D. Wendel the executor of his will.
The questions presented for our consideration are, first, is the limitation over of these slaves in the above-recited item of the will to the heirs of her son Beverly Randolph (who is still living) a valid limitation? and, secondly, is it consistent with the rules of construction to refer to the second item in the will, which contains a bequest of all the residue of testatrix’s estate of every description to three of the daughters of Beverly Randolph and any other heir or heirs that he may have at any time before his death, for the purpose of ascertaining the intention of the testatrix in the bequests contained in the first item of the will ?
It cannot be expected that the numerous cases decided upon the subject of executory devises should be referred to or commented upon, or that any attempt be made to reconcile them: this would be a difficult and perhaps an impossible task. In the arguments and briefs of the counsel on both sides, which have been of great ability, many of these cases have been cited and the elementary books referred to, which almost exhaust the subject. ' This examination would be unprofitable, as our own books of reports contain very learned and powerful discussions upon execu-tory limitations; and the alteration of the law by the act of 1851, ch. 2, will in a few years, render it unnecessary to examine the fifty-seven cases alluded to by Lord Ellen- *668 borough in Doe vs. Ellis, 9 East, as having been mentioned by Lord Thurlow in Bigge vs. Bensley, 1 Brown’s Chan. Oases, 700, as having occurred on this head, as well as numerous others since that time.
It may also be unnecessary to discuss the question whether the distinction taken by the English Courts between an executory devise of real and of personal estate, that, in the one case, “ dying without issue made an estate tail of real property, yet that in respect to personal property, which is transient and perishable, the testator could not have intended a general failure of issue, but issue at the death of the first taker.” This was raised by Lord Macclesfield in Forth vs. Chapman, 1 Peere Williams, 663, and sustained by Lord Hardwicke, Lord Mansfield, and Lord Eldon, although doubted by Lord Thurlow, Loughborough, and Sir William Grant. As is said by Chancellor Kent, “there is such an array of opinions on each side, that it becomes difficult to ascertain the balance upon the mere point of authority.” See 4 Kent’s Com., 282, and the notes.
In endeavoring to ascertain the intention of the testator, Judges and Chancellors have sometimes forgotten to pronounce the positive rules of law, which cannot be disregarded without producing a distressing confusion in the administration of the rights of property. In ordinary language, says Mr. Jarmon, (vol. ii. p. 418,) where a testator gives an estate to a person and his heirs, with a limitation over in case of his dying without issue, he means that the devisee shall retain the estate if he leaves issue surviving him,- and not otherwise; and where the phrase is, in case the first taker die before he has any issue, or if he have no issue, the intention probably is that the estate shall *669 belong absolutely to the devisee, on his having issue born. But the established legal interpretation of these several expressions is different; for it has been long settled that words referring to the death of a person without issue, whether the terms be, “if he die without issue,” or “if he have no issue,” or “if he die before he has any issue,” or “for want or in default of issue,” unexplained by the context, and whether applied to real or to personal estate, are construed to import a general indefinite failure of issue, that is, a failure or extinction of issue at any period. A dying without heirs, or heir, or heirs of the body, is construed by the common law, like a dying without issue, to be too remote an event upon which to suspend a limitation. The reason of the rule is, that a limitation to take effect upon an indefinite failure of issue of a person who takes the absolute property is void because it violates the rule against perpetuities, and also that a limitation over of personal property cannot be made to take effect after the expiration of an absolute interest, whether absolute expressly or by implication. In the case of Lepine vs. Ferard, 2 Russell & Milne, 378, 13 Cond. Chan. Rep. 84, it was decided that a gift over of money upon the death of a legatee without issue is void, unless from the words of the will it can be collected that a testator meant a death without issue at the time of the death of the legatee. And in the case of Camplell vs. Harding, same book, page 90, a testator by his will gave to Caroline, his natural daughter, a sum of stock and his house and land at C., with a direction that if she married, the property should be settled solely upon herself and children, but in case of her death without lawful issue, the money so left to her to be equally divided betwixt his nephews and nieces who *670 might be living at the time, and the land at C. to his nephew J. M. Held, that Caroline took an absolute interest in the stock. This case, under the name of Candy vs. Campbell, was affirmed in the House of Lords, and is reported in 8 Bligh., New Series, 469.
In the clause of the will now under consideration there is a bequest of the absolute interest in the slaves to Peter Randolph and Sarah Randolph, to them, their heirs and assigns, for ever: had it been real estate, it would have been a devise in fee simple. The limitation is, that if Peter should die without issue, then his portion to Sarah; and if she should die without an heir — which is equivalent to the words without issue — then her proportion to Peter; and if they both should die without an heir of their body, then over to the heirs of Beverly Randolph. These limitations, without issue, without an heir, and without an heir of their body, without any qualifying words to control them, import an indefinite failure of issue, and the limitations are too remote.
2. In examining the second question, we find the authorities in favor of construing such bequests by the clause of the will in which they are contained. “Upon a review of all the cases,” says the Chancellor, in the case of Campbell vs. Harding, before referred to, “I am satisfied that no authority can be found for going beyond the devise itself, taking all its parts together. I will not be stopped by a colon or a period : if the next succeeding sentence is manifestly a substantial part of the bequest, I shall treat it like an act of Parliament, which has no stops, and read it as a part of the bequest. But I will not go into another branch of the will for the purpose of showing a general intention. Of what use is it to look at intention *671 in these eases? Did any man ever make a will in which he wished that an executory devise should fail? The Court is hound to look to the particular devise, and not to travel out of it in order to find circumstances for restricting the generality of the terms in which the executory gift over is limited.” 18 Cond. Chan. R., 100; 2 Russ. & Milne, 890. In our own Court, the same question has keen substantially decided. Simpson vs. Smith, 1 Sneed, 396, and Hay vs. Conner, 8 Humph., 633; McKay vs. McKay, not reported, decided in this Court December Term, 1852. In the last case, the question arose upon the will of , who left certain slaves
to he disposed of as follows: “I give to my daughter Rebecca McKay two negroes, Hester and Hailey, to remain in her possession during her life, and after her death to he equally divided among her heirs by consent or valuation, and not to he sold.” Rebecca died leaving a husband and certain children surviving her. Three of the children filed their hills against the husband and another child claiming a right to a portion of the slaves. There was this clause in another part of this will: “ I give to my grandchildren, heirs of Sarah McKay, wife of David McKay, one negro girl.” It was insisted that reference might he had to this clause to show that by heirs in the first was meant grandchildren. This Court decided that the other clause would not he referred to, and that the word heir was not a word of purchase, hut of limitation.
We are of opinion that the decree of the Chancellor was correct, and must he affirmed.